IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANDREA E. FOSHEE                                                                                        PLAINTIFF

v.                        Civil No. 3:14-cv-03129-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Andrea Foshee, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

On September 20, 2012,[1] the Plaintiff filed her application for SSI alleging disability since June 1, 2007,[2] due to seizures, attention deficit hyperactivity disorder ("ADHD"), anxiety, depression, anger issues, high blood pressure, and acid reflux. (Tr. 81, 95-96, 165-170, 190, 207,

---

[1] Plaintiff filed earlier applications for SSI and child insurance benefits in September and October 2009, respectively. (Tr. 56) This Court ultimately affirmed he Commissioner's final decision denying benefits on December 18, 2013. (Memorandum Opinion 3:12-cv-3126-JRM, December 18, 2013, ECF No. 11)

[2] SSI benefits are not payable for a period prior to application; therefore, the relevant period begins on the date Plaintiff filed her application. **Error! Main Document Only.***Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citations omitted); *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.203(b).

230-231) The Commissioner denied Plaintiff's application initially and on reconsideration. (Tr. 81-110) An Administrative Law Judge ("ALJ") held an administrative hearing on September 11, 2013. (Tr. 27-52) Plaintiff was present and represented by counsel, Frederick Spencer.

At the time of the administrative hearing, the Plaintiff was 24 years old and possessed a high school education. (Tr. 50, 81, 95, 192, 243) She had no past relevant work ("PRW") experience. (Tr. 19, 198-199, 222-223)

On October 17, 2013, the ALJ concluded Plaintiff's seizure disorder, obesity, chronic low back pain, borderline intellectual functioning ("BIF"), learning disorder not otherwise specified, generalized anxiety disorder, and personality disorder not otherwise specified were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 10-14) After partially discrediting the Plaintiff's subjective complaints, the ALJ determined the Plaintiff retained the residual functional capacity ("RFC") to perform light work except:

> she can only occasionally climb, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to heat and cold and even moderate exposure to hazards such as dangerous machinery and unprotected heights, and she cannot drive. The claimant is limited to work that involves simple, routine and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes. She can have no more than incidental contact with coworkers, supervisors and the general public.

(Tr. 14) With the assistance of a vocational expert, the ALJ then concluded the Plaintiff was capable of performing work as a housekeeper, assembler, and inspector. (Tr. 20)

The Appeals Council denied the Plaintiff's request for review on November 14, 2014. (Tr. 1-3) Subsequently, Plaintiff filed this action. (ECF No. 1) This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 11, 14)

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

3

gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

### III. Discussion:

On appeal, the Plaintiff challenges the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

First, the Plaintiff contends the ALJ's RFC is flawed because it does not adequately account for the vocational impact of her seizures, especially her more frequent petit mal seizures. Records reveal the Plaintiff experienced her first seizure in 2007, while recovering from a cholecystectomy. Seizure activity continued thereafter, resulting in a prescription for Topamax in January 2009. Unfortunately, she was not compliant with treatment, reportedly failing to take the Topamax as prescribed. An EEG conducted in February 2009 was also unremarkable.

In November 2009, the Plaintiff had reportedly experienced two seizures over the previous two months. Dr. Paul Tucker added Lamictal and adjusted her Topamax dosage. (Tr. 477-478) The doctor's notes document his concerns that these spells were seizure-like, but not actual seizures. A repeat EEG conducted in December 2009 was only mildly abnormal based principally on a mild, single burst of activity in hyperventilation. (Tr. 473-474) Dr. Tucker indicated that these changes could be related to mild seizure activity. In January 2010, Dr. Tucker noted the Lamictal had been "a good drug." (Tr. 472) However, due to her reports of additional seizures, he increased her dosage.

There are no further records documenting treatment for seizure activity for approximately two years. In January 2012, the Plaintiff reported experiencing seizures twice per week. (Tr. 314) Again, Dr. Tucker increased her Lamictal dosage. In July 2012, Dr. Paul Wilbur diagnosed her with poorly controlled seizure disorder due to reports of three or four seizures per month (Tr. 312) He prescribed Dilantin. Two weeks later, she reported experiencing no seizures since starting Dilantin. And, we can find no further records documenting seizure activity or complaints regarding seizures until 2013.

On February 7, 2013, Dr. Wilbur completed a medical source statement indicating he had last treated the Plaintiff for seizures in July 2012. (Tr. 330-331) At that time, Dr. Wilbur indicated

that her seizure disorder was under control. Three days later, the Plaintiff returned to Dr. Wilbur's office reporting four grand mal and a questionable number of petit mal seizures over the previous week. (Tr. 333) She also complained of dizziness, headaches, and stress and exhibited elevated blood pressure. Interestingly, Dr. Wilbur diagnosed her with vertigo and high blood pressure, making no mention of her seizure disorder, and prescribed medication to treat these diagnoses.

On July 10, 2013, the Plaintiff returned to MHCC due to sinusitis. (Tr. 350) She reported experiencing four grand mal seizures per month and three to four petit mal seizures per week. Dr. Wilbur made no medication changes or adjustments; and, although treated for abdominal pain, peptic ulcer disease, sinusitis, and a boil on her right hip, the Plaintiff made no further complaints regarding her seizure disorder. (Tr. 349-350, 499-508, 513-520) In fact, on September 24, 2013, Dr. Wilbur reiterated that her seizure disorder was under fair control via Dilantin and Lamictal. (Tr. 533)

Thus, although the record does reveal that the Plaintiff has experienced some seizures, the frequency of those seizures is not clear. It does appear as though the addition of Lamictal and Dilantin lessened the frequency of her seizures. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Had she truly been experiencing the number of seizures she alleges, we believe she would have sought out more treatment for her seizure activity. Accordingly, due to Dr. Wilbur's statements and the absence of consistent treatment and/or hospitalization for seizures during the relevant period, we find substantial evidence to support the ALJ's RFC determination.

Plaintiff also asserts that the ALJ failed to consider the effects of her morbid obesity. As is the case with any medical impairment, though, a diagnosis of obesity does not automatically require a finding of disability. *See Trenary v. Bowen*, 898 F.2d 1361, 1365 (8th Cir. 1990). The

ALJ must make a disability determination regarding the degree of disability based on the functional limitations, if any, the impairment causes. *Id*. The medical records consistently diagnose Plaintiff as obese or morbidly obese. (Tr. 312, 333, 356, 358, 362, 364, 366, 367, 370, 377, 378, 380, 522-531) Further, she was prescribed medications, as well as exercise for weight loss. (Tr. 297, 346, 546) However, we can ascertain no obesity-related functional limitations assessed by doctors. Moreover, the Plaintiff did not report any specific limitations associated with her obesity. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (Plaintiff's failure to represent, in her application or at the administrative hearing, that she experienced any limitations due to her obesity undermines her contention of disabling obesity).

The ALJ specifically considered the Plaintiff's obesity, noting that it was reasonable to conclude that her obesity could exacerbate her back and lower extremity pain. (Tr. 17) He also included exertional, postural, and environmental limitations in his physical RFC assessment. (Tr. 14) These limitations mirror many of those suggested as possible limitations for an individual suffering from obesity in SSR 02-1p. *See* SSR 02-1p, *4, 2000 WL 628049. As such, we find the ALJ properly considered the Plaintiff's obesity and the impact it might have on her ability to perform work-related activities.

Finally, Plaintiff insists the ALJ's RFC determination fails to account for the complete findings of Dr. Robert Hudson. She fails to state, however, any specific limitations imposed by Dr. Hudson that are not included in the RFC. And, we can glean no additional limitations from the record.

At the outset, we note that the Plaintiff had no history of formal mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating

Plaintiff's allegations of disability due to a mental impairment). At the Commissioner's request, Dr. Hudson conducted a mental diagnostic evaluation and intellectual assessment on January 6, 2010, two years prior to the relevant period. (Tr. 303-307) Dr. Hudson examined the Plaintiff on only one occasion, diagnosing her with adjustment disorder with depressed mood, learning disorder not otherwise specified, ADHD not otherwise specified, and borderline intellectual functioning. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). He also assessed the Plaintiff with a global assessment of functioning score between 61 and 70. Dr. Hudson indicated she would be limited with regard to persisting, completing tasks in a timely manner, and performing basic work-like tasks. He also opined that no employer would give the Plaintiff much responsibility. Further, he noted although she attempted some tasks during testing that she knew she could not perform, she would not be persistent without motivation. Additionally, Dr. Hudson stated the Plaintiff took more time to respond to simple tasks than would the average person.

On November 28, 2012, Dr. Nancy Bunting also completed a mental status and evaluation of adaptive functioning exam. (Tr. 321-325) She diagnosed the Plaintiff with generalized anxiety disorder and personality disorder not otherwise specified and assessed her with a GAF of 50-60. Dr. Bunting found the Plaintiff had some capacity to cope with the cognitive demands of basic work-like tasks; deal with co-workers and bosses; deal with the public; the ability to follow instructions from supervisors, attend and sustain concentration in the interview; adequate concentration for basic tasks; adequate persistence; and, the ability to complete work-like tasks within an acceptable time. Interestingly, she also doubted the Plaintiff's claim of experiencing two grand mal seizures per week stating this would be exceptionally debilitating. (Tr. 324) This is

8

particularly compelling given her report to Dr. Bunting that she had adequate energy and did not need any "down time" following a grand mal seizure. (Tr. 324)

After reviewing the evidence, we find the ALJ's restriction to simple, routine and repetitive tasks involving only simple, work-related decisions with few, if any, workplace changes and incidental contact with coworkers, supervisors and the general public adequately accounts for all of the limitations imposed by the Plaintiff's severe mental impairment. Accordingly, we find that substantial evidence supports the ALJ's physical and mental RFC determination.

### IV. Conclusion:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the decision. The undersigned further orders that the Clerk of Court dismiss the Plaintiff's Complaint with prejudice.

DATED this 16th day of March, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE